## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWIN ESTIEN, | : | CIVIL NO. 1:CV-13-2474 |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| v. | : | |
| | : | |
| MARY LOU SHOWALTER, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

On September 30, 2013, Plaintiff Edwin Estien, an inmate currently

incarcerated at the State Correctional Institution in Coal Township, Pennsylvania

("SCI-Coal Township"), commenced this civil rights action by filing a complaint

pursuant to the provisions of 42 U.S.C. § 1983.  (Doc. 1.)  In the complaint, Plaintiff

alleges that Defendants, past and present employees ("Corrections Defendants") of his

former place of incarceration, the State Correctional Institution in Huntingdon,

Pennsylvania ("SCI-Huntingdon"), as well as medical staff employed at SCI-

Huntingdon ("Medical Defendants"),[1] were deliberately indifferent to his serious

medical needs with respect to care for injuries to his thumb.  Plaintiff also raises

allegations of retaliation, conspiracy, and related state law claims.

---

[1]  The Corrections Defendants named are as follows: former Corrections Health Care Administrator ("CHCA") Showalter; current CHCA Price; Security Captain Harris; and RHU Lieutenant Dunkle.  The Medical Defendants named are as follows: Clinical Coordinator Tracey Parkes, and Luis O. Araneda, M.D.

Presently before the court are two motions to dismiss, filed by both sets of Defendants.  (Docs. 16 & 20.)  For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   Background

### A.   Facts

In the complaint, Plaintiff provides the following factual background with respect to his claims.  For purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

On April 17, 2012, Plaintiff suffered a broken left thumb and deep cut from a razor blade as a result of altercation with another inmate at his former place of incarceration, SCI-Huntingdon.  (Doc. 1 ¶ 1.)  After the fight, Plaintiff was escorted to the Restricted Housing Unit ("RHU").  (*Id.*)  Plaintiff requested medical assistance once there, and Defendant RHU Lieutenant Dunkle took photographs of Plaintiff's swollen and bleeding left thumb.  (*Id.* ¶ 1.)  Plaintiff alleges that Defendant Dunkle stated that he would not call for medical assistance and told Plaintiff to "sit in [his] cell and think about what [he] did because the inmate that [he] was fighting was one

of his informants and the pain [he's] in should teach [him] a lesson." (*Id.*)  Defendant

Dunkle failed to inform the medical department of Plaintiff's need for assistance on

that day, April 17, 2012.  (*Id.*)  As a result, Plaintiff stayed in an RHU cell that night

without being seen by medical and suffered pain for three (3) subsequent days before

he was seen by the prison's medical staff and then taken to an outside hospital.  (*Id.* ¶

2.)

      On April 20, 2012, Plaintiff was examined at SCI-Huntingdon's medical

department by a woman identified by Plaintiff as Ms. Milisa, who x-rayed Plaintiff's

injuries and informed Defendants Parkes and Showalter, both Health Care

Administrators at the institution, of Plaintiff's injuries.  (*Id.* ¶ 3.)  Defendant Parkes

organized an escort team to take Plaintiff to the Altoona Regional Hospital for

treatment.  (*Id.*)  At the hospital, a physician identified by Plaintiff as Dr. Stauff noted

Plaintiff's broken thumb, as well as a piece of razor blade left in it from the fight.  (*Id.*

¶ 4.)  He requested immediate surgery and scheduled two walk-in appointments,

including one in particular scheduled for April 23, 2012.  (*Id.*)  Both Defendants

Parkes and Showalter were informed of Plaintiff's appointments and need for

immediate surgery.  (*Id.* ¶¶ 5, 6.)  However, Defendant Parkes did not make the

3

arrangements to have Plaintiff escorted to Altoona Hospital on April 23, 2012.  (*Id*. ¶ 5.)

On April 30, 2012, Plaintiff submitted a request slip to Defendant Showalter, requesting pain medication for his injuries.  (*Id*. ¶ 7.)  Defendant Showalter responded on the same day, informing Plaintiff that "she'd do nothing for [him] until [he] returned to the outside hospital and [was] seen by an orthopedic specialist."  (*Id*.)  As a result, Defendant Showalter took no immediate steps to schedule Plaintiff for an appointment with a nurse or physician's assistant, to contact Dr. Stauff about surgery, or to give Plaintiff medication.  (*Id*.)

Plaintiff alleges that due to this delay, he remained in severe pain until May 9, 2012, at which time he was seen again by Dr. Stauff.  (*Id*. ¶ 8.)  He alleges that, at the examination, Dr. Stauff stated that Plaintiff's bone had taken on a "V shape" and that he was "scared to touch [Plaintiff's] hand based on his experience."  (*Id*.)  As a result, Plaintiff was sent to State College Orthopedic Center, where he underwent surgery on his hand performed by Dr. Christopher Lincoskie on May 10, 2012.  (*Id*.)

On June 15, 2012, Plaintiff requested an emergency medical referral from the nurse he saw on the medical line after his hand got jammed in the food slot of his cell door.  (*Id*. ¶ 9.)  Defendant Dr. Araneda came to Plaintiff's cell that same day, looked at Plaintiff's cast and concluded there was no further damage to his hand.  (*Id*.)

4

Defendant Dr. Araneda also noted that Plaintiff was already prescribed Motrin for the pain. (*Id*.) Plaintiff alleges that Defendant Dr. Araneda told Plaintiff he should "[bear] the pain because he's not doing nothing else for [him]." (*Id*.)

Plaintiff's cast was removed on June 18, 2012. (*Id*. ¶ 10.) On June 21, 2012, Plaintiff submitted a sick call slip to address his pain. (*Id*.) Resultantly, Defendant Dr. Araneda examined Plaintiff on June 22, 2012 for the pain and Plaintiff's difficulties flexing his fingers. (*Id*.) Plaintiff asked Defendant Dr. Araneda about a brace and six (6) weeks of physical therapy ordered by the doctor who performed the surgery. (*Id*.) Defendant Dr. Araneda responded that Plaintiff would not be receiving the brace and that physical therapy was not necessary. (*Id*.)

On July 2, 2012, Plaintiff encountered Defendant Captain Harris in the RHU's recreation yard. (*Id*. ¶ 14.) Plaintiff reminded Defendant Harris that he had sent him a request slip pertaining to the brace for his arm, but Defendant Harris had denied that request. (*Id*.) Defendant Harris confirmed that he was not granting the request, stating, according to Plaintiff, "you should have thought about that when you got into that fight." (*Id*. ¶ 15.) He also stated that he knew Plaintiff possessed a weapon during the fight, which may have been gang-related, but understood that Plaintiff had to defend himself because "the odds were against" Plaintiff. (*Id*.)

On July 16, 2012, Plaintiff wrote two request slips to Defendant Nurse Price, inquiring about physical therapy and the brace for his arm.  (*Id*. ¶ 12.)  Defendant Price responded the following day, indicating that Plaintiff would start physical therapy in August and, at that time, he would be evaluated for a brace.  (*Id*.)  Plaintiff asserts that he never started physical therapy or received a brace.  (*Id*.)

On July 17, 2012, Plaintiff was seen by Defendant Dr. Araneda and Nurse Lench for the continued pain and stiffness in his left wrist and thumb.  (*Id*. ¶ 11.)  When Plaintiff asked about physical therapy, Defendant Dr. Araneda told Plaintiff to try gripping a tennis ball in his cell, but Nurse Lench stated that he could use a wash rag and Plaintiff "should stop being a big baby."  (*Id*.)

On July 24, 2012, Defendants Price and Dr. Araneda visited Plaintiff at his cell.  (*Id*. ¶ 13.)  Plaintiff claims this visit was in response to his filing a grievance against Defendant Price for her "nefarious atrosity [sic] and scheme to cover up Ms. Mary Lou Showalter downfalls."  (*Id*.)  Plaintiff asked again about receiving physical therapy, and, according to Plaintiff, Defendant Price responded, "Do you think filing any grievances is going to help you, you got another thing coming Mr., you will rot in this RHU before you get any help from any one of us."  (*Id*.)  In addition to this

encounter, Plaintiff also received a response from Defendant Showalter to a grievance he previously filed, with reference to an earlier response to another grievance.  (*Id*.)

### B.    Procedural History

Plaintiff initiated this action with a complaint filed on September 30, 2013. (Doc. 1.)  By order dated October 7, 2013, the court directed service of the complaint on all Defendants named therein.  (Doc. 7.)  On December 9, 2013, Corrections Defendants filed a motion to dismiss the complaint and supporting brief.  (Docs. 16 & 17.)  On December 16, 2013, Medical Defendants also filed a motion to dismiss the complaint and supporting brief.  (Docs. 20 & 21.)  Pursuant to M.D. Pa. Local Rule 7.6, Plaintiff had fourteen (14) days from the service of each set of motions to dismiss and briefs to file briefs in opposition to the motions.  Since the filings of the motions to dismiss, the court granted Plaintiff five extensions of time to file one all-inclusive brief in opposition.  (*See* Docs. 23, 28, 31, 34, 39.)  In the latest of the orders granting Plaintiff's requests for an extension, the court directed Plaintiff to file one all-inclusive brief in opposition by June 23, 2014.  (Doc. 39.)  In addition, per Plaintiff's request, the court informed Plaintiff that, at the time he files his brief in opposition to the motions to dismiss, he may file a proposed amended complaint, which would be screened by the court pursuant to 28 U.S.C. § 1915.  (*Id*.)  Because Plaintiff neither

filed an opposition to either motion to dismiss nor filed a proposed amended

complaint, the court again extended the deadline for Plaintiff's response by order

dated July 2, 2014.  (Doc. 40.)  After subsequently granting two additional motions

for extensions of time, (*see* Docs. 44, 46), the court received Plaintiff's briefs in

opposition (Docs. 48, 49) and proposed amended complaint (Doc. 47) on August 8,

2014.  Corrections Defendants filed a reply brief on August 22, 2014.  (Doc. 50.)

Thus, the motions to dismiss are now ripe for disposition.


## II.   <u>Standard of Review</u>

Among other requirements, a sound complaint must set forth "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in the

context of Rule 8(a)(2) "depends on the type of case – some complaints will require at

least some factual allegations to make out a showing that the pleader is entitled to

relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation

omitted).  "[A] situation may arise where, at some point, the factual detail in a

8

complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.*  A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord, e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation" (quotations and citations omitted)).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is

"plausible on its face," a complaint will survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383,

388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to

the pleadings, a document *integral to or explicitly relied* upon in the complaint may be

considered without converting the motion to dismiss into one for summary judgment."

(internal quotation omitted)).  However, the court may not rely on other parts of the

record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d

1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the

complaint liberally and draw fair inferences from what is not alleged as well as from

what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.

Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to

less stringent standards than formal pleadings drafted by lawyers." *Erickson*,551 U.S.

at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

11

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   **Discussion**

In order to state a viable § 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[2]  A prerequisite for a viable civil rights claim is

---

[2]  The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id.*

As stated, there are two motions to dismiss pending in the instant case. In the Corrections Defendants' motion to dismiss, they argue that the complaint should be dismissed on the following grounds: (1) Plaintiff has failed to allege personal involvement on the part of some of the Corrections Defendants and the denial of inmate grievances and appeals does not give rise to constitutional violations; (2) Plaintiff has failed to allege Corrections Defendants' deliberate indifference to his serious medical needs; (3) Plaintiff has failed to state a claim of retaliation against Corrections Defendants; (4) Plaintiff has failed to state a claim of conspiracy against Corrections Defendants; and (5) Plaintiff's claims of intentional torts should be dismissed because Corrections Defendants are immune from suit. In the Medical Defendants' motion to dismiss, they argue that the complaint should be dismissed on the following grounds: (1) Plaintiff has failed to state a claim of deliberate

13

indifference against the Medical Defendants; (2) Plaintiff's medical negligence and malpractice claims are barred due to Plaintiff's failure to file a certificate of merit; (3) Plaintiff has failed to state a claim of conspiracy against Medical Defendants; (4) Plaintiff has failed to state a claim under the Fourteenth Amendment;[3] and (5) Plaintiff's claims for punitive damages should be dismissed.[4]  The court will first address the Corrections Defendants' argument concerning personal involvement before addressing the balance of the motions to dismiss.

### A.  **Personal Involvement**

Commonwealth Defendants argue that Defendant Dunkle should be dismissed as a party in this action because Plaintiff has failed to show his personal involvement with respect to Plaintiff's claim relating to deliberate indifference to his serious medical needs.  Further, they argue that Defendants Showalter and Price should be dismissed as a parties because Plaintiff has failed to show their personal involvement based solely on their authority to grant or deny inmate grievances.

---

[3]  Plaintiff claims that Defendants' actions constituted deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment, and in doing so mentions the due process clause.  (*See* Doc. 1 ¶ 20.)  The claim of deliberate indifference to serious medical needs is an Eighth Amendment claim rather than a due process claim.  *O'Donnell v. Pa. Dep't of Corr.*, Civ. No. 4:08-CV-00136, 2011 WL 1258327, at *5 (M.D. Pa. Mar. 7, 2011).  Thus, the court need not address this argument by Defendants.

[4]  Based on the court's disposition of both motions to dismiss, the court will defer ruling upon punitive damages at this time.

14

It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of respondeat superior.  *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 368 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well settled in the Third Circuit that the defendant's personal involvement in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Hampton*, 546 F.2d at 1082.  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based.  *Id*.  As the court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted).  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *Id*. at 1208.

### 1.    **Defendant Dunkle**

15

Plaintiff alleges that, on the day of the inmate fight, Defendant Dunkle refused to get medical assistance for him, but took photographs of his thumb and told him to think about what he had done.  (Doc. 1 ¶ 1.)  In their brief in opposition, Corrections Defendants argue that Plaintiff has failed to allege personal involvement by Defendant Dunkle because he cannot be held liable for taking photographs of Plaintiff's injuries and is not responsible for providing medical care to inmates in the RHU.  Initially, the court agrees that Defendant Dunkle cannot be liable for simply taking photographs of the injuries to Plaintiff, which he did so presumably to document the events surrounding the inmate fight.  Further, normally a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  Providing medical care is the responsibility of medical professionals.  In this case, however, Plaintiff was not yet receiving treatment for his injuries when Defendant Dunkle refused to call for medical assistance.  Where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  *See id*.  Thus, the court will not dismiss Defendant Dunkle as a party in this action on the basis of lack of personal involvement.

16

### 2.   Defendants Showalter and Price

Regarding Plaintiff's claims against Defendants Showalter and Price with

respect to grievances, Plaintiff cannot assert liability against corrections staff due to

their involvement in reviewing and/or affirming grievance decisions.  First, the filing

of a grievance is not sufficient to show the actual knowledge necessary for personal

involvement. *Rode*, 845 F.2d at 1208.  Second, mere concurrence in a prison

administrative appeal process does not implicate a constitutional concern. *Garfield v.

Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of

prison disciplinary hearings is not constitutionally guaranteed and, therefore, the

plaintiff's claims with respect to the Program Review Committee's decision did not

rise to constitutional significance).  While prisoners have a constitutional right to seek

redress of their grievances from the government, that right is the right of access to the

courts, which is not compromised by the failure of the prison to address grievances.

*Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir.

1998).  In addition, an inmate has no federally protected liberty interest in having

grievances resolved in his favor or to his satisfaction. *Tabb v. Hannah*, Civ. No. 1:10-

CV-1122, 2012 WL 3113856, at *5 (M.D. Pa. July 30, 2012).  Stated otherwise, a

prison official's failure to agree with an inmate's allegations, or take specific action

requested by a prisoner, does not without more, indicate unconstitutional conduct by those who respond to the grievance. *See Alexander v. Forr*, Civ. No. 3:04-CV-0370, 2006 WL 2796412, at \*19-20 (M.D. Pa. Sept. 27, 2006); *see also Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D.D.C. 1995) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable.").  For these reasons, Plaintiff's deliberate indifference claim will be dismissed as to Defendants Showalter and Price, *only* to the extent that these claims were brought against these Defendants solely based on their involvement with the handling of Plaintiff's relevant grievances. The court will address Plaintiff's further allegations with respect to these Defendants *infra*.

## B.    Eighth Amendment Deliberate Indifference Claims

In their motions to dismiss, both sets of Defendants argue that Plaintiff has failed to establish a claim of deliberate indifference to his serious medical needs.  A Section 1983 claim based on a violation of the Eighth Amendment's prohibition of unnecessary and wanton infliction of pain arises where prison officials or doctors exhibit deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A deliberate indifference claim has two

components: (1) an objective component under which the plaintiff must show that denial of care itself was serious or that it had serious consequences; and (2) a subjective component under which the plaintiff must show that the defendant has a sufficiently culpable state of mind.  *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).  Further, a serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Mines v. Levi*, 2009 WL 8390011, at *7 (E.D. Pa. Mar. 26, 2009) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d at 1017, 1023 (3d Cir. 1991)); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Young v. Kazmerski*, 226 F. App'x 191, 193 (3d Cir. 2008) (quoting *Lanzaro*, 834 F.2d at 347).

Deliberate indifference occurs where a defendant: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended medical treatment; or (4) persists in a particular

19

course of treatment "in the face of resultant pain and risk of permanent injury." *Rouse v. Allen*, 182 F.3d 192, 197 (3d Cir. 1999).  However, "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"  *Id.* (citing *Estelle*, 429 U.S. at 105); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (finding that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation); *Lanzaro*, 834 F.2d at 346 (stating mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim).  In *Estelle*, the Supreme Court held the following:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105-06.

It follows then that inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for

medical action or inaction does not amount to cruel and unusual punishment. *Runkle*,

2013 WL 6485344, at * 8 (citing *Maqbool v. Univ. Hosp. of Medicine & Dentistry of*

*N.J.*, Civ. No. 11-4592, 2012 WL 2374689, at * 9 (D. N.J. Jun. 13, 2012)).  As such,

allegations that the inmate was provided with medical care, but the care was

"inadequate," fails to state a cognizable claim. *Runkle*, 2013 WL 6485344, at *8

(citing *Taylor v. Visinsky*, 422 F. App'x 76, 78 (3d Cir.), *cert. denied*, ___ U.S. ___,

132 S. Ct. 406 (2011)).  *See also Jetter v. Beard*, 130 F. App'x 523, 526 (3d Cir.

2005) (noting that while the plaintiff would have preferred a different course of

treatment, his preference does not establish an Eighth Amendment cause of action).

Rather, "the decision whether to summon a doctor, like the question of whether a

certain diagnostic technique or form of treatment should be prescribed, 'is a classic

example of a matter for medical judgment.'" *McNeil v. Redman*, 21 F. Supp. 2d 884,

887 (C.D. Ill. 1998) (quoting *Estelle*, 429 U.S. at 107).  Accordingly, the deliberate

indifference test "affords considerable latitude to prison medical authorities in the

diagnosis and treatment of the medical problems of inmate patients.  Courts will

'disavow any attempt to second guess the propriety or adequacy of a particular course

of treatment . . . which remains a question of sound professional judgment.'" *Little v.*

*Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny*

*Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

In the matter *sub judice*, Plaintiff alleges that Defendant Dunkle intentionally refused to call the medical department to address Plaintiff's injuries when he entered the RHU on April 17, 2012. (Doc. 1 ¶ 1.) According to Plaintiff, after Defendant Dunkle took photographs of Plaintiff's swollen and bloody thumb, he expressly told Plaintiff that he was not getting any medical assistance and that Plaintiff should "sit in [his] cell and think about what [he] did because the inmate that [Plaintiff] was fighting was one of [Defendant Dunkle's] informants and the pain [Plaintiff was] in should teach [him] a lesson." (*Id.*) As a result of Defendant Dunkle's refusal to inform medical staff of Plaintiff's injuries, Plaintiff was left in his RHU cell for three days without medical assistance. (*Id.* ¶ 2.) While the Third Circuit has held that a non-physician defendant such as Defendant Dunkle cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints while the inmate is undergoing treatment by the prison medical staff, there is no prohibition to liability when the claim arises from events preceding the commencement of the treatment. *See Durmer*, 991 F.2d at 69. In their motion to dismiss, Corrections Defendants argue that Defendant Dunkle is not liable because he was not responsible for providing medical

care to inmates in the RHU; rather, that care was the responsibility of medical professionals. (Doc. 17 at 6.) This argument is unavailing because Plaintiff's allegations clearly amount to Defendant Dunkle's deliberate indifference to his serious medical needs *prior* to any medical attention he later received from medical staff. Thus, Corrections Defendants' motion to dismiss as to Defendant Dunkle will be denied, and the Eighth Amendment deliberate indifference claim against him may proceed.

Turning to the remaining Defendants, the allegations in Plaintiff's complaint clearly demonstrate that Plaintiff received medical treatment beginning on April 20, 2012 following the injuries to his thumb resulting from the April 17, 2012 inmate fight. Three days after the fight, Plaintiff was examined by SCI-Huntingdon's medical department by way of x-ray.[5] (Doc. 1 ¶ 3.) In addition, Plaintiff was immediately referred to the Altoona Regional Hospital for further evaluation and treatment. (*Id.*) At the hospital, he was examined by Dr. Stauff, who, Plaintiff claims, requested immediate surgery and follow-up appointments for April 23, 2012. (*Id.* ¶¶

---

[5] As the court has already determined that, based on Plaintiff's allegations, Corrections Defendant Dunkle was the cause of the 3-day delay in treatment, allegedly for non-medical reasons, the court need not discuss this 3-day delay in the context of a claim of deliberate indifference against the remaining Defendants. Nothing in Plaintiff's complaint leads the court to conclude that any other Defendant participated in that 3-day delay. (*See* Doc. 1.)

4-6.)  According to Plaintiff, Defendants Parkes and Showalter knew of the scheduling needs for the surgery and appointments, but intentionally made no such arrangements for Plaintiff's transportation.  (*Id*. ¶¶ 4, 7.)  In fact, Plaintiff did not return to Dr. Stauff until May 9, 2012, at which time the doctor stated that, because of the state of Plaintiff's hand, he could not perform the necessary surgery.  (*Id.* ¶ 8.)  As a result, on May 10, 2012, almost a month after Plaintiff sustained the serious injury, another outside doctor performed surgery on Plaintiff's thumb.  (*Id*.)  Plaintiff alleges that he remained in severe pain due to this nearly month-long delay.  (*Id.*)  In their motions to dismiss, both sets of Defendants seemingly argue that, because Plaintiff "eventually" underwent surgery, even if the treatment was ineffective, he has not established deliberate indifference.  (*See* Doc. 17 at 8; Doc. 21 at 7-8.)  However, Defendants' arguments do not properly respond to Plaintiff's allegation that Defendants Parkes and Showalter *deliberately* refused to make scheduling arrangements for Plaintiff's surgery after receiving Dr. Stauff's request for immediate surgery.  Moreover, these Defendants do not provide any justification or reasoning for the delay in scheduling the recommended treatment, such as a medical directive to do so or a holdup due to bureaucratic procedures.[6]  At this stage in the litigation and without further discovery,

---

[6]  In response to Plaintiff's allegation that Defendant Showalter failed to act after he wrote to her requesting pain medication prior to the May 10, 2012 surgery, Corrections Defendant

the court cannot assume that the extent of the risk to Plaintiff posed by that delay was not serious.  Thus, the motions to dismiss as to Defendants Parkes and Showalter will be denied, and the deliberate indifference claims against them for the delay in treatment for Plaintiff's injuries may proceed.

Turning to Plaintiff's allegations with respect to treatment after the May 10, 2012 surgery, Plaintiff complains that he was denied physical therapy and a brace despite informing medical staff of his pain and discomfort.  With respect to the physical therapy, Plaintiff avers that Defendant Dr. Araneda, after examining Plaintiff several times in the weeks following the surgery, told him that physical therapy was not necessary.  (*Id.* ¶ 10.)  Even so, on July 17, 2012, Defendant Dr. Araneda recommended exercises he could perform in his cell to ease the pain and stiffness in his wrist and thumb.  (*Id.* ¶ 11.)  From the complaint it appears that Defendant Dr. Araneda's plan was not the one that Plaintiff had desired.  A prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim.  *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979).

---

argue that her response, "She'd do nothing until [Plaintiff] return to the outside hospital and [was] seen by an orthopedic specialist," (Doc. 1 ¶ 7), is reasonable because Plaintiff could have obtained medication from the prison commissary or requested it from a nurse or doctor.  (*See* Doc. 50 at 7-8.) Given that Plaintiff's relevant allegation involves Defendant Showalter's delay in scheduling such a return to the outside hospital, this argument is without merit.

Further, courts will not second guess whether a particular course of treatment is

adequate or proper.  *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997).

Because Plaintiff acknowledges that a treatment plan was provided to him, the court

concludes that his claim with respect to physical therapy is solely premised on his

disagreement with medical determinations and evaluations made by Defendant Dr.

Araneda and, therefore, Plaintiff has not established this deliberate indifference claim.

Turning to the request for a brace, in their brief in opposition, Corrections

Defendants contend that there were likely legitimate penological reasons for denying

Plaintiff the brace while he was in the RHU.  (Doc. 50 at 5.)  Further, RHU inmates

have been denied canes and walkers because they contain metal which can be used to

fashion a weapon.  (*Id.*)  Based on this concern for institutional security, the court

concludes that Plaintiff has failed to establish a claim of deliberate indifference for

failing to provide him with a brace.  *See Whitley v. Albers*, 475 U.S. 312, 321-22

(1986) (holding that prison officials should be accorded wide ranging deference in the

adoption and execution of policies necessary to preserve internal order and maintain

institutional security); *Lerma v. Bell*, 2 F. App'x 782, 784 (9th Cir. 2001) (affirming

district court's granting of summary judgment to defendants who confiscated the

plaintiff's elastic knee brace for legitimate safety concerns).

In sum, the court will allow the claims against Corrections Defendants Dunkle and Showalter and Medical Defendant Parkes for deliberate indifference to Plaintiff's serious medical needs based on their respective intentional delays in requesting and/or scheduling medical treatment on behalf of Plaintiff to proceed.  The motions to dismiss with respect to the remaining Defendants will be granted, as Plaintiff has not established claims of deliberate indifference against Defendants Harris, Price, or Araneda.

### C.    Retaliation Claim

Plaintiff alleges that Corrections Defendants Price and Showalter denied him medical treatment in retaliation for his written and verbal complaints against them. (Doc. 1 ¶ 18.)  Upon review, the court will grant the motion to dismiss as to Defendant Price, but will allow the claim against Defendant Showalter to proceed.

An official who retaliates against an inmate for exercising his constitutional rights is subject to liability under § 1983.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against

him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks

and citations omitted).  The prisoner bears the initial burden of showing that the

"constitutionally protected conduct was 'a substantial or motivating factor' in the

decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy Bd.*

*of Educ. v. Doyle*, 429 274, 287 (1977)).

Plaintiff arguably has engaged in conduct protected by the First Amendment by

filing grievances about the medical care he was receiving and by verbally complaining

to Defendants Price and Showalter.  *See Booth v. King*, 346 F. Supp. 2d 751, 762

(E.D. Pa. 2004).  As to Defendant Price, Plaintiff alleges that he complained to her

about the care he was receiving after the surgery, specifically with respect to physical

therapy and a brace.  As a result of those complaints, he asserts, he was denied

appropriate care.  However, as the court has already determined that there exist no

Eighth Amendment violations related to Plaintiff's medical care after the May 10,

2012 surgery, Plaintiff has failed to establish any adverse action taken by Defendant

Price.  Stated otherwise, the complaint fails to suggest any nexus between Plaintiff's

expressive conduct (filing written and verbal grievances with Defendant Price) and the

quality of the treatment he received.  None of Plaintiff's allegations against Defendant

Price give rise to an inference of retaliatory conduct, and therefore the motion to dismiss pertaining to this claim will be granted.

Turning to Plaintiff's allegations of retaliation against Defendant Showalter, in light of the court's finding herein as to the deliberate indifference claim against Defendant Showalter, at this stage in the litigation, the court will allow this claim of retaliation related to the delay of medical treatment to proceed.  The motion to dismiss as to this claim will be denied.

###    D.    Conspiracy Claim

Plaintiff alleges that Defendants Showalter, Parkes, Price, Araneda, and Harris conspired against him in connection with the denial of medical care both before and after his May 10, 2012 surgery.  In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the

officials responsible for the conduct.  *Oatess v. Sobolevitch*, 914 F.2d 428, 432 n.8 (3d

Cir. 1990).  *See also Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy claim is an agreement or concerted action between

individuals.  *See D.R. by L.R.*, 972 F.2d at 1377; *Durre*, 869 F.2d at 545.  A plaintiff

must therefore allege with particularity and present material facts which show that the

purported conspirators reached some understanding or agreement or plotted, planned

and conspired together to deprive the plaintiff of a protected federal right.  *See D.R. by

L.R.*, 972 F.2d at 1377; *Rose*, 871 F.2d at 366.  Where a civil rights conspiracy is

alleged, there must be specific facts in the complaint which tend to show a meeting of

the minds and some type of concerted activity.  *Deck v. Leftridge*, 771 F.2d 1168,

1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and

unsupported speculation.  *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Plaintiff fails to state a viable conspiracy claim against Defendants Showalter,

Parkes, Price, Araneda, and Harris.  His general allegations that these Defendants,

worked in concert to deny him medical care are conclusory, and fall short from

satisfying the requirement that a civil rights conspiracy claim contain specific facts

that tend to show a meeting of the minds and concerted activity.  Indeed, there are

simply no allegations in the complaint to support a plan or agreement of these

Defendants to conspire or engage in a corrupt plot to violate Plaintiff's civil rights, and the court therefore rejects any of Plaintiff's speculative contentions as clearly baseless.  *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (finding that conspiracy claims which are based upon *pro se* plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)).  Accordingly, the motions to dismiss will be granted as to this claim.

### E.     State Law Claims

Plaintiff also asserts medical negligence and malpractice claims related to his medical care, as well as claims of intentional infliction of emotional distress and, what the court construes as, negligent infliction of emotional distress against Corrections Defendants and Medical Defendants.  The court will discuss the claims as they apply to both sets of Defendants.

### 1.     Medical Negligence / Medical Malpractice

### a.     Corrections Defendants

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310.  The

31

General Assembly specifically waived sovereign immunity in nine areas, including cases involving medical professional liability.[7]  *See* 42 Pa. Cons. Stat. Ann. § 8522. However, it is well-settled that immunity is waived only for claims asserted against health care employees, and not to individuals who are not medical professionals. *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 Pa. Cons. Stat. Ann. § 8522(b)(2)).

Here, Plaintiff's medical negligence and malpractice claims against Corrections Defendants are barred by Pennsylvania's sovereign immunity statute.  While the claim does fall within the category of waiver for acts of health care employees of Commonwealth agency medical facilities or institutions, *see* 42 Pa. Cons. Stat. Ann. § 8522(b)(2), these named Defendants from SCI-Huntingdon are not health care

---

[7]  The nine exceptions to sovereign immunity pursuant to 42 Pa. Cons. Stat. Ann. § 8522(b) are:

(1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

employees.  Thus, the medical negligence and malpractice claims set forth against Corrections Defendants will be dismissed.

### b.  **Medical Defendants**

Plaintiff alleges claims of medical negligence and malpractice against Medical Defendants for their refusal to provide him with physical therapy and a brace for his thumb.  Because such negligence claims sound in medical malpractice, Plaintiff was required to submit expert evidence to establish his claim.  Because he has failed to do so, Medical Defendants seek dismissal of these claims against them.

To make out a claim for medical malpractice under Pennsylvania law, a plaintiff must show that: (1) the physician owed the patient a duty of care; (2) the physician breached the duty; (3) the breach caused the harm suffered; and (4) the damages were a direct result of the harm.  *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).  Unless "the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension" of a lay person, a plaintiff must submit expert evidence to show breach and causation.  *Id*. (quoting *Hightower-Warren v. Silk*, 988 A.2d 52, 54 n.1 (Pa. 1997).  *See also* Pa. R. Civ. P. 1042.3 (requiring a certificate of merit from an appropriate licensed professional for professional liability actions).

33

In this case, Plaintiff's negligence and medical negligence claims clearly sound in medical malpractice.  Plaintiff challenges the medical care and treatment Medical Defendants provided for the injuries to his thumb.  Further, the medical issues he raises here, including the need for physical therapy and a brace following surgery, are not so simple that a lay jury could be expected to evaluate them without expert testimony.  Plaintiff has failed to file a certificate of merit in the 365 days since he filed his complaint.  Such a failure renders his medical negligence claims insufficient as a matter of Pennsylvania law.  *See Toogood*, 824 A.2d at 1145; Pa. R. Civ. P. 1042.3; *see also Iwanejko v. Cohen & Grigsby*, 249 F. App'x 938, 944 (3d Cir. 2007) (affirming district court's application of Pa. R. Civ. P. 1042.3 as substantive state law).

### 2.    Intentional Infliction of Emotional Distress

In Pennsylvania, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).  Such tortious conduct, "'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

34

intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998)

(quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super.

Ct. 1987)).  Under this standard, "[i]t has not been enough that the defendant has acted

with an intent which is tortuous or even criminal, or that he has intended to inflict

emotional distress, or even that his conduct has been characterized by 'malice,' or a

degree of aggravation which would entitle the plaintiff to punitive damages for

another tort." *Daughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. Ct. 1988) (quoting

Restatement (Second) of Torts § 46(1) (1965), Comment(d)).

     Here, Plaintiff has failed to establish any conduct on the part of any Defendant

that would constitute an intentional infliction of emotional distress.  In fact, Plaintiff

has not alleged anything close to the extreme and outrageous conduct that would give

rise to a claim for intentional infliction of emotional distress.  *See, e.g.*, *Hoy*, 720 A.2d

at 754 (citing *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (holding intentional

infliction of emotional distress proper when the defendant, after striking and killing

the plaintiff's son with an automobile and thereafter failing to notify authorities or

seek medical assistance, buried body in a field where it was discovered two months

later and returned to parents); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa.

Super. Ct. 1981) (holding intentional infliction of emotional distress proper when the

defendants intentionally fabricated records to suggest that the plaintiff had killed a

third party which led to the plaintiff being indicted for homicide); *Chuy v.*

*Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (holding intentional

infliction of emotional distress proper when the defendant's team physician released

to press information that the plaintiff was suffering from fatal disease, when physician

knew such information was false); *Johnson v. Caparelli*, 625 A.2d 668, 672 (Pa.

Super. Ct. 1993) (regarding a priest's sexual abuse of altar boy); *Field v. Philadelphia*

*Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989) (discussing claim that

defendant deliberately vented highly radioactive steam on the plaintiff and attempted

to conceal overexposure to radiation).  Plaintiff's claims do not rise to the level of

conduct necessary to bring an intentional infliction of emotional distress claim.

Accordingly, Plaintiff's intentional infliction of emotional distress claim will be

dismissed.

### 3.   Negligent Infliction of Emotional Distress

Plaintiff has also failed to state a claim of negligent infliction of emotional

distress.  Under Pennsylvania law, "the cause of action for negligent infliction of

emotional distress is restricted to four factual scenarios: (1) situations where the

defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was

36

subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby

reasonably experiencing a fear of impending physical injury; or (4) the plaintiff

observed a tortious injury to a close relative." *Toney v. Chester Cnty. Hosp.*, 961 A.2d

192, 197-98 (Pa. Super. Ct. 2008) (citing *Doe v. Philadelphia Cmty. Health*

*Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. Ct. 2000).  Here,

Plaintiff's allegations do not fit into any of these scenarios.  From a generous reading

of the complaint, Plaintiff alleges that the refusal to provide him with physical therapy

appointments caused him emotional distress.  However, Plaintiff further alleges that

Defendant Dr. Araneda advised him of physical exercises (with a tennis ball or wash

rag) he was free to perform in his cell to alleviate any stiffness in his wrist.  In light of

this further allegation, Plaintiff has failed to provide sufficient evidence that it was

Defendants' failure to schedule additional physical therapy that has caused him

substantial physical harm.  Therefore, Plaintiff's negligent infliction of emotional

distress claim will be dismissed.

## F.   <u>Amended Complaint</u>

Plaintiff contemporaneously filed a"motion and opposition with amended

complaint," (Doc. 47), with his briefs in opposition to the instant motions to dismiss,

(Docs. 48 & 49).  The court finds that the proposed amended complaint does nothing

to cure any of the deficiencies noted herein.  Therefore, this case will proceed on the instant disposition of the motions to dismiss the original complaint.

## IV.   <u>Conclusion</u>

For the reasons set forth above, both motions to dismiss will be granted in part and denied in part.  Defendants Harris, Price, and Araneda will be dismissed as parties in this action.  Corrections Defendants Showalter and Dunkle and Medical Defendant Parkes will be directed to answer the complaint.

An appropriate order will issue.


<u>    s/Sylvia H. Rambo        </u>
United States District Judge

Dated:  September 30, 2014.

38